**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ROBERT DAVIS,**

|  |  |
|---|---|
| **Petitioner,** | **1:05-CV-0256** |
| **vs.** | **(NAM)** |
|  | **Related Criminal Action** |
| **UNITED STATES OF AMERICA,** | **1:03-CR-0323** |
|  |  |
| **Respondent.** |  |

_____

**APPEARANCES**                                    **OF COUNSEL:**

Robert Davis
11373-052
Federal Correctional Complex
P.O. Box 90043
Petersburg, VA 23804-9003
Petitioner, *pro se*

Office of the United                              Thomas Spina, Jr., Esq.
States Attorney                                   Assistant U.S. Attorney
James T. Foley United States Courthouse
445 Broadway
Albany, NY 12207-2924
Attorney for the Respondent

**NORMAN A. MORDUE, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.      BACKGROUND[1]**

Sometime in February, 2002, a police officer employed by the Town of Colonie, New

York, acting in an undercover capacity, began conversing in various public and private "chat

rooms" via the Internet service provider America OnLine ("AOL").  *See* Plea Agreement

(8/13/03) (03-CR-0323, Dkt. No. 20) ("Plea Agreement") at ¶ 5.  On February 18, 2002, the

undercover officer was contacted in a "chat room" by the petitioner, Robert Davis, who at the

---

[1]      The background information contained in this Memorandum-Decision and Order is derived
from the documents filed in the present civil action, *Davis v. United States*, 1:05-CV-0256 ("05-CV-0256"), as
well as the related criminal matter, *United States v. Davis*, 1:03-CR-0323 (N.D.N.Y.) ("03-CR-0323").

time was utilizing the screen name "Mrdmjd2."  *Id.*  During the course of their online communications, the undercover officer informed Davis that the officer was a 14 year-old female named "Meghan" from the Watervliet, New York area.  *Id.*[2]  Davis thereafter advised "Meghan" that he wished to meet a girl her age so that he could take her shopping as well as teach her about sex.  *Id.*  Davis also informed her that although he lived in Pennsylvania, he would nevertheless like to visit her in New York.  Plea Agreement at ¶ 5.[3]

During an online discussion in which Davis and "Meghan" were engaged on February 26, 2002, he informed her that he would be near her house later that day and would rent a hotel room for the two of them.  *Id.*  Davis expressed his desire at that time to engage in intercourse with her, give her orgasms, and "pull[] out" to prevent her from getting pregnant.  *Id.*  The undercover officer, however, did not meet Davis at that time, and he later informed her through the Internet that he had traveled to Latham on that day to meet her and was disappointed when she failed to meet him.  *Id.*

On April 13, 2002, Davis again attempted to establish another meeting with "Meghan."  Plea Agreement at ¶ 5.  In furtherance of that plan, Davis requested that she meet him at a local department store in Latham, New York, after which they would go to a hotel room where they would watch pornographic movies and he would give her presents he had purchased for her.  *Id.*  When "Meghan" indicated that she would meet Davis, he traveled from his Pennsylvania home to the store in Latham he had mentioned in his e-mail.  Law enforcement officials were present in

---

[2]    Although the undercover officer who was engaged in the relevant undercover operation was actually a male, *see* 05-CV-0256, Dkt. No. 10 at Exh. 7, because he represented to Davis that he was a fourteen year old girl, *id.* at ¶ 3, the Court will refer to the officer in the female gender throughout this Memorandum-Decision and Order.

[3]    During their initial conversation on February 18, 2002, Davis transmitted a photograph of his naked genitals to Meghan.  Plea Agreement at ¶ 5.

2

the area and placed Davis under arrest.[4]  *Id.*  After that arrest, Davis was informed of his *Miranda*

rights[5] by Investigator Stephen Tanski.  05-CV-0256, Dkt. No. 10 at Exh. 7.  After

acknowledging that he understood those rights and was nevertheless willing to speak with law

enforcement agents without the benefit of counsel, Davis admitted to the police that he had

traveled to the Albany, New York area to meet a 14-year-old girl named "Meghan."  Plea

Agreement at ¶ 5.  He also admitted that he had met this girl on-line and had engaged in

conversations of a sexual nature with her prior to traveling to Albany on April 13, 2002.  *Id.*

Later that day, Davis executed a voluntary statement regarding his actions involving

Meghan.  In that statement, Davis declared, *inter alia*, that he:

> had a [*sic*] on line conversations about sex and about meeting a 14
> year-old girl at the K-Mart parking lot in Latham, NY.  I went there
> because I thought I was going to meet a 14 year-old girl named
> Meghan.  I went to the K-Mart to meet this girl, but I didn't know
> what I was going to do with her.  I really didn't know if I was going
> to have sex with her.  It was more fantasy in my mind then really
> having sex with a 14 year-old girl.  I went to K-Mart and went to
> the front door just to see if the girl was there and I was more
> concerned that it was raining out and how she was going to get
> home.  I had no intentions of getting a hotel room.  I was maybe
> going to go to a movie, get something to eat and talk[].  I never
> thought about getting a motel room.  I wasn't sure if I was going to
> have sex with her.  I had a video camera and a digital camera in my
> car but they were in there because I was going to take pictures of
> my children at sports today.  The sex toys and the lingerie were
> meant for my wife's 40th birthday, which is August 25th.

*See* Voluntary Statement of Robert Davis (4/13/02) (reproduced in 05-CV-0256, Dkt. No. 10 at

Exh. 6) ("Voluntary Statement").

Based upon the foregoing, on August 13, 2003, a criminal information was filed against

---

[4]       A search of Davis' car at the time of his arrest revealed several items, including lingerie, shirts,
sneakers, a video camera, a digital camera, video tapes of Davis engaged in sexual acts with adult females as
well as several sexually-oriented items.  Plea Agreement at ¶ 5.

[5]       *Miranda v. Arizona*, 384 U.S. 436 (1966).

Davis by Assistant United States Attorney Thomas Spina, Jr. ("AUSA Spina"). *See* 03-CR-0323, Dkt. No. 1 ("Information"). In that accusatory instrument, Davis was charged with knowingly and intentionally traveling in interstate commerce for the purpose of engaging in a sexual act with a child under eighteen years of age, in violation of 18 U.S.C. § 2423(b).[6] *See* Information.

On August 13, 2002, following negotiations between Davis' retained counsel, Terence L. Kindlon, Esq., and AUSA Spina, Davis entered into the above-referenced Plea Agreement wherein he agreed to plead guilty to the one count Information charging him with violating 18 U.S.C. § 2423(b). *See* Plea Agreement at ¶ 1(a). Davis also agreed in his Plea Agreement to waive his right to appeal, or collaterally attack through a Motion to Vacate brought pursuant to 28 U.S.C. § 2255 his judgment of conviction, as well as any sentence of imprisonment of 41 months or less. *See id.* at ¶ 13.

At the proceeding over which this Court presided wherein Davis formally entered his change of plea, he admitted to the Court that he had engaged in the conduct alleged in the Information. *See* Transcript of Change of Plea (03-CR-0323, Dkt. No. 38) ("Plea Tr.") at p. 10. AUSA Spina then discussed the legal basis for the charge brought against Davis, *see* Plea Tr. at pp. 15-17, and noted that Davis appeared to be subject to a term of imprisonment under the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") of between 46 to 57 months imprisonment, but that such range could be reduced to a range of between 33 to 41

---

[6] 18 U.S.C. § 2423, entitled "Transportation of minors," provides, in pertinent part:

  **(b)**  **Travel with intent to engage in illicit sexual conduct.**
    A person who travels in interstate commerce ...
    for the purpose of engaging in any illicit sexual
    conduct with another person shall be fined under
    this title or imprisoned not more than 30 years, or
    both.

18 U.S.C. § 2423(b). 18 U.S.C. § 2423(f) in turn defines "illicit sexual conduct" as "a sexual act ... with a person under 18 years of age ...."

4

months if he continued to cooperate with the Government. Plea Tr. at p. 19. Davis thereafter

affirmatively declared that his trial attorney had discussed the Sentencing Guidelines with him

and that Davis was familiar with the manner in which they operated. *Id.* The following colloquy

then ensued:

> THE COURT: Okay. Does the defendant have a right to withdraw his plea here, Mr. Spina?
>
> MR SPINA: No, Your Honor. On page 10, paragraph 13 [of the Plea Agreement], Mr. Davis has agreed to waive his right to appeal or collaterally attack his conviction and sentence, as long as his sentence is 41 months or less.
>
> THE COURT: Has Mr. Kindlon discussed that with you, Mr. Davis?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You understand, if I sentence you to 41 months or less, there will be no appeal of any issue in this lawsuit? Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: If I sentence you to something greater than that, then you'll have to discuss with Mr. Kindlon what your options are and whether you feel it's advisable to pursue an appeal, okay?
>
> THE DEFENDANT: Yes, Your Honor.

*See* Plea Tr. at pp. 19-20. This Court then accepted Davis' guilty plea to the charge against him

contained in the Information. *Id.* at pp. 25-26.

On February 24, 2004, Davis appeared before this Court for sentencing. *See* Transcript of

Sentencing (2/24/04) (03-CR-0323, Dkt. No. 40) ("Sentencing Tr."). At that proceeding, this

Court noted that the base offense level for his crime was 21, his total offense level was 22, and his

criminal history category was level I. *Id.* at p. 10. This Court thereafter sentenced him to a term

of imprisonment of 33 months, the bottom of the range of imprisonment to which he was subject

5

under the Sentencing Guidelines.  *Id.*

Davis did not file any appeal relating to his conviction or sentence.  Motion to Vacate at ¶ 8.

On February 23, 2005, Davis filed the present Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255.  *See* 05-CV-0256, Dkt. No. 1 ("Motion to Vacate").[7]  In his first ground for relief, Davis alleges numerous theories in support of his claim that he received the ineffective assistance of counsel.  *See* Motion to Vacate, Ground One.  In his next ground, Davis asserts additional theories in support of an ineffective assistance claim, and also argues that his guilty plea was not intelligently and voluntarily made.  *Id.*, Ground Two.  In his third ground, Davis claims that the prosecutor engaged in misconduct in the criminal matter below when he:  i) wrongfully failed to provide Davis with all *Brady*[8] material to which he was entitled; and ii) "falsified evidence against Petitioner."  Motion to Vacate, Ground Three.  In his final ground for relief, Davis argues that he was wrongfully denied the opportunity to file an appeal in the related criminal matter.  Motion to Vacate, Ground Four.  Davis has also filed a memorandum of law in support of his Motion to Vacate.  *See* 05-CV-0256, Dkt. No. 6 ("Supporting Mem.").

The Government filed its response in opposition to Davis' Motion to Vacate on July 14, 2005.  *See* 05-CV-0256, Dkt. No. 10.  Included in that submission is a memorandum of law in opposition to Davis' application.  *See* Attachment to Dkt. No. 10 ("Resp. Mem.").  Petitioner

---

[7]    Although the Clerk stamped Davis' pleading as "filed" on February 28, 2005, *see* Motion to Vacate at p. 1, Davis signed his petition on February 23, 2005.  *See id.* at p. 7.  The Second Circuit has held that, due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he hands the papers to the prison authorities for transmittal to the court.  *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir.), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994); *Moshier v. United States*, 402 F.3d 116, 117 (2d Cir. 2005) (applying "prison mailbox rule" to motions to vacate brought pursuant to 28 U.S.C. § 2255); *Mingo v. United States*, 360 F.Supp.2d 591, 593 (S.D.N.Y. 2005) (same).  This Court therefore views this action as having been commenced by Davis on February 23, 2005.

[8]    *Brady v. Maryland*, 373 U.S. 83 (1963).

thereafter filed a reply memorandum of law in further support of the present motion.  *See* Dkt. No. 12 ("Reply").

## II.    DISCUSSION

### A.    Waiver of Right to Appeal

Respondent initially argues that Davis is precluded from raising these claims in this collateral challenge to his conviction in light of the waiver he executed in his Plea Agreement. *See* Resp. Mem. at pp. 1-2.

"It is well established in this Circuit that a knowing and voluntary waiver of the right to appeal is enforceable."  *United States v. Cunningham*, 292 F.3d 115, 117 (2d Cir. 2002) (citing *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see DeLeon v. United States*, Nos. 02 CIV. 9745, 00 CR. 1236, 2003 WL 21769836, *3 (S.D.N.Y. July 30, 2003) (defendant's waiver of right to appeal sentence that is within an agreed upon Sentencing Guidelines range "is enforceable when a 'defendant ... knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement'") (quoting *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998)).  Thus, where the hearing held in conjunction with a plea agreement establishes that the defendant entered into the agreement voluntarily and with an understanding of its terms, including the waiver of his right to file an appeal, the waiver provision is enforceable.  *See Liberato v. United States*, Nos. 99 CR 137, 01 CIV. 3056, 2001 WL 930238, *5 (S.D.N.Y. Aug. 16, 2001) (citation omitted).

In the related criminal matter, Davis specifically acknowledged during the plea allocution that he understood that, under the terms of the Plea Agreement, he was waiving his right to appeal or file any collateral attack regarding his conviction if he received a sentence of imprisonment of 41 months or less.  *See* Plea Tr. at 20.  Therefore, at first blush, it would appear that respondent

properly claims that Davis is necessarily barred from maintaining the present collateral challenge to his conviction. However, in *Frederick v. Warden, Lewisburg Correctional Facility*, 308 F.3d 192 (2d Cir. 2002), the Second Circuit noted that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, [such as a] plea agreement." *Id.*, 308 F.3d at 195-96 (citation omitted).

Several of the theories asserted by Davis in his Motion to Vacate challenge either the effective assistance of Davis' counsel or the propriety of the guilty plea itself. *See* Motion to Vacate. Since "'the very product of the alleged ineffectiveness' [(the plea agreement)] cannot fairly be used to bar a claim of ineffective assistance of counsel," *Sharpley v. United States*, 499 F.Supp.2d 208, 211 (N.D.N.Y. 2007) (Kahn, J.) (quoting *Hernandez*, 242 F.3d at 114) (other citation omitted), Davis is not prohibited from asserting herein claims that directly attack the effectiveness of his counsel with respect to the plea agreement into which Davis ultimately entered, or the voluntary nature of that plea. *See Frederick*, 308 F.3d at 195-96; *Sharpley*, 499 F.Supp.2d at 211-12, *see also Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) ("ineffective assistance of counsel argument survives a waiver of appeal ... when the claimed assistance directly affected the validity of that waiver or the plea itself") (internal quotation and citation omitted).

**B.     Substance of Claims**

**1.     Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right to counsel has long been recognized as one that entitles a defendant to the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14

(1970). Under the familiar two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), an individual who claims he received the ineffective assistance of counsel must demonstrate that the representation: (1) "fell below an objective standard of reasonableness," *id.*, 466 U.S. at 688, and (2) prejudiced the defendant. *Id.* at 694; *see also Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006); *United States v. Champion*, 234 F.3d 106, 109 (2d Cir. 2000) (citing *Strickland*).

This Court now reviews *seriatim* the numerous theories Davis asserts in support of his ineffective assistance claim.

### a.     Ground One

Petitioner initially asserts that his attorney wrongfully failed to pursue a mistake of law defense to the Criminal Information lodged against him. Motion to Vacate, Ground One; *see also* Supporting Mem. at 4-6. In support of this claim, petitioner states that "during written internet communications," "Meghan" informed Davis that she was eighteen years old and completing the twelfth grade. *See* Supporting Mem. at 4-5. He further asserts that "Meghan" explicitly stated that she was eighteen years old on several other occasions, and that therefore his attorney rendered ineffective assistance by not asserting a defense based upon the foregoing. *Id.* at 5.

However, no record evidence supports Davis' claim that "Meghan" ever claimed to be, or represented to Davis that she was eighteen. To the contrary, the transcripts provided to the Court regarding Davis' online discussions with "Meghan" conclusively establish that she advised Davis that she was a minor. For example, in an online conversation between the two that occurred on February 26, 2002, Davis had referred to "Meghan's" age as thirteen, however she advised him that she was actually fourteen. *See* 05-CV-0256, Dkt. No. 10, Exh. 4 at p. 9. In another exchange between the two, "Meghan" advised Davis that she was in the ninth grade. *Id.* at p. 15. Since the record squarely contradicts Davis' unsupported claim that "Meghan" advised him that she was

eighteen years old, and instead establishes that "Meghan" held herself out as a minor, petitioner's

trial counsel cannot be found to have rendered ineffective assistance by failing to assert a mistake

of age defense.

Davis next argues that defense counsel wrongfully failed to move to dismiss the

Information or, alternatively, pursue an entrapment defense to the criminal charge.  *See* Motion to

Vacate, Ground One.  In support of this assertion, Davis contends that he met "Meghan" in an

online chat room called "Older Men / Younger Women," which was not a chat room for children.

Supporting Mem. at p. 6.  Petitioner further asserts that "Meghan" was "constantly e-mailing

[Davis'] house ... and leaving sexy messages to return the e-mail."  *Id.*

"A successful entrapment defense requires that a defendant convince the fact-finder that

government agents induced [him] to commit an offense that []he was not otherwise predisposed to

commit."  *United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir. 1991) (citing *Mathews v. United

States*, 485 U.S. 58, 62-63 (1988)); *see also United States v. Chin*, 934 F.2d 393, 398 (2d Cir.

1991).  In its response in opposition to Davis' Motion to Vacate, the Government filed an

affirmation executed by Attorney Kindlon.  *See* 05-CV-0256, Dkt. No. 8 ("Kindlon Aff.").  In that

submission, Attorney Kindlon unequivocally declares that he investigated the defense of

entrapment as it related to the allegations brought against Davis.  *See* Kindlon Aff. at ¶ 6.

Defense counsel has noted, however, that Davis never denied, until after he was sentenced, the

Government's evidence which demonstrated that "***he*** had initiated explicit sexual conversations

with 'Meghan' and ... ***tried repeatedly*** to make arrangements to meet 'Meghan.'"  *Id.* (emphasis

added).  Consequently, counsel believed that "there was no viable entrapment defense" to raise

with respect to the Criminal Information returned against Davis.  *Id.*

The "failure to assert a baseless claim does not fall below an objective standard of

reasonableness nor prejudice the defendant." *Guidice v. United States*, No. 03 CV 4983, 2007 WL 1987746, at * 6 (E.D.N.Y. July 3, 2007) (internal quotation and citation omitted). Since there was no basis upon which defense counsel could have properly pursued an entrapment defense on behalf of Davis in the criminal matter below, counsel cannot be found to have rendered ineffective assistance in failing to assert that defense.

Davis next faults his attorney because he did not file a motion which sought to suppress Davis' incriminating statement to the police. *See* Motion to Vacate, Ground One. In support of this claim, petitioner asserts that he was informed by law enforcement agents that he could not receive a bail bond unless he signed the statement, and that he therefore signed that document without reading it. Supporting Mem. at p. 7. He also claims that he never voluntarily waived his *Miranda* rights, and affirmatively declares that he advised law enforcement agents that he wished to exercise his right to remain silent when he was questioned by the police. Supporting Mem. at p. 7. In a related claim, petitioner asserts that his counsel wrongfully failed to file a motion seeking to suppress an audio tape recording that was made of a telephone conversation in which he had engaged with "Meghan." *See* Motion to Vacate, Ground One. Davis augments this claim in his supporting memorandum of law, where he argues that counsel was ineffective not only because he failed to move to suppress that audio recording but also various incriminating e-mail communications which Davis had exchanged with the undercover officer. *See* Supporting Mem. at pp. 11-12. Davis argues that if counsel had filed a suppression motion regarding the foregoing, he would have discovered that law enforcement agents had tampered with the transcript of the audio recording, as well as the e-mail transmissions, by illegally altering the age of "Meghan" on those transcripts from eighteen to fourteen years of age. *Id.* at p. 12.

Initially, the Court notes that the objective evidence before the Court strongly suggests

11

that there was no basis upon which defense counsel could have properly moved to suppress the incriminating statement Davis provided to law enforcement agents. Davis initialed that document in several places and signed the confession in the presence of a police officer. *See* Voluntary Statement. Furthermore, Sgt. Stephen M. MacLacso of the Colonie Police Department, who interviewed Davis subsequent to his arrest, filed an affidavit with the Court wherein he explicitly states that Davis read the typed statement in the sergeant's presence and initialed various portions of that statement before signing it. *See* 05-CV-0256, Dkt. No. 10 at Exh. 7. This evidence casts significant doubt on Davis' current, unsubstantiated claim that he signed that document without reading it (*see* Supporting Mem. at p. 7).[9]

Moreover, trial counsel explained in his affidavit that he "certainly would have moved to suppress any ... statements" Davis made to the police if the case had proceeded to trial, but that "no such motions were filed because Mr. Davis chose to plead guilty before the time motions were to be filed." *See* Kindlon Aff. at ¶ 8. That testimony of Davis' trial attorney – which Davis did not contest in any way in his Reply – is buttressed by the fact that no deadline for the filing of motions in the criminal matter below had yet been established at the time Davis executed the plea agreement. *See* 03-CR-0323, Dkt. No. 17.[10] Thus, even assuming as true Davis' claim that he executed the *Miranda* waiver under "great duress" and only because he was informed that his incriminating statement was a "routine" aspect of the criminal investigation, the contents of which could "be changed later," *see* Reply at p. 3, it is clear that petitioner cannot demonstrate that his trial counsel rendered ineffective assistance by failing to file a suppression motion because the

---

[9]   In his voluntary statement, Davis specifically acknowledges that he was advised by Sgt. MacLacso that Davis: i) had a right to an attorney; ii) was not required to make any statement or incriminate himself; and iii) was nevertheless making the statement of his own free will. *See* Voluntary Statement.

[10]   Davis waived his right to an Indictment. *See* 03-CR-0323, Dkt. No. 18.

12

evidence demonstrates that counsel would have filed such an application if the criminal matter

had proceeded to trial.

Trial counsel further notes that during the course of his representation of Davis, Davis

never informed counsel that Davis believed that the transcripts which reflected the

communications between himself and Meghan had ever been altered, and that counsel was only

made aware of such allegations after Davis filed his Motion to Vacate. *See* Kindlon Aff. at ¶ 12.

Counsel therefore argues that there would have been "no reason" to file a suppression motion

relating to those transcripts. *Id.*

Since:  i) the time for filing a suppression motion had not yet passed by the time Davis

decided to plead guilty to the Information; and ii) counsel was unaware of any legal basis upon

which he could properly file a motion to suppress the transcripts of the audio recording and e-mail

communications that the prosecution intended to use as evidence against Davis, he has failed to

establish that his counsel rendered ineffective assistance by failing to file any pretrial suppression

motion.[11]

Davis also contends that his trial attorney wrongfully failed to obtain a court order to

permit forensic testing of the computer Davis used to communicate with "Meghan" which he

claims would have established that "Meghan" informed Davis that she was eighteen years old.

Motion to Vacate, Ground One.  However, as noted *ante*, the record squarely contradicts Davis'

---

[11]        Although Davis also argues that there was "no wiretap warrant" with respect to the audio
recording made of his conversation with "Meghan," *see* Motion to Vacate at p. 5a, he appears to acknowledge in
his supporting memorandum of law that the wiretap evidence which the prosecutor intended to use against Davis
was nevertheless admissible because the undercover officer involved in the criminal investigation had consented
to the recording.  Supporting Mem. at p. 12.  To the extent petitioner does not concede that the wiretapping of his
conversation with "Meghan" was legal, the Court notes that "[t]he express or implied consent of one participant
in a [recorded] conversation is sufficient to satisfy the requirements of ... the Fourth Amendment."  *White v.
Herbert*, No. 02-CV-0439 2006 WL 3728878, at *11 (N.D.N.Y. Dec. 15, 2006) (McCurn, S.J.) (quoting *United
States v. Heatley*, 994 F.Supp. 483, 490 (S.D.N.Y. 1998)), *appeal dismissed White v. Herbert*, No. 07-0117pr (2d
Cir. Jan. 30, 2007).  Since the individual who portrayed herself as "Meghan" clearly consented to the recording
of her conversation with Davis, that recording was admissible notwithstanding the fact that no search warrant
was obtained by law enforcement agents.

13

claim that "Meghan" ever claimed to be eighteen years old.  As discussed above, the transcripts of

the on-line discussions between the two establish that "Meghan" represented to Davis that she

was a fourteen year old girl in ninth grade.  *See* 05-CV-0256, Dkt. No. 10, Exh. 4 at pp. 9, 15.

That objective evidence, which is entirely consistent with Davis' incriminating statement wherein

he declares that he had an "on line conversation[] about sex and about meeting a 14 year old

girl ... named Meghan," *see* Voluntary Statement, severely undermines Davis' current claim that

an examination of his computer would have revealed that the undercover officer who was

communicating with Davis informed him that "Meghan" was eighteen years old.  Additionally,

the transcript of the proceeding wherein Davis changed his plea[12] reflects that Davis agreed with

AUSA Spina's description of petitioner's crime, which included AUSA Spina's statements that:

i) "Meghan" had informed Davis that she was "a 14-year-old female;" and ii) Davis admitted to

the police after his arrest that "he traveled to the Albany area to meet a 14-year-old girl named

Meghan."  *See* Plea Tr. at pp. 16-17.[13]

Since there is no evidence that "Meghan" ever claimed to be eighteen, there was no reason

for defense counsel to believe that a forensic examination of Davis' computer would have assisted

counsel's defense to the charge against Davis.  Thus, counsel's failure to seek such testing of

Davis' computer was not objectively unreasonable.

Petitioner also contends that his attorney wrongfully signed, over Davis' objections,

stipulations with the Government which excluded various periods of time from the Speedy Trial

---

[12]    As discussed more fully *post*, the Court finds Davis' claims challenging the validity of his plea to be without merit.

[13]    Attorney Kindlon claims in his affirmation that Davis never indicated to counsel that the undercover officer represented that she was eighteen years old until petitioner commenced this action.  Kindlon Aff. at ¶ 9.  In his Reply, Davis does not contradict that testimony.  *See* Reply.

Act.[14]  *See* Motion to Vacate. Ground One.  However, nothing in the record supports Davis'

current, unsubstantiated claim that he ever opposed the stipulations into which his defense

counsel had entered.  In this regard, the Court notes that Attorney Kindlon has testified that Davis

"consented to waiving his speedy trial time...."  Kindlon Aff. at ¶ 10.  Davis declined to dispute

that testimony in his reply.  *See* Reply.

Furthermore, this claim fails to acknowledge the fact that the Supreme Court has

recognized that "'the lawyer has – and must have – full authority to manage the conduct of the

trial.'"  *New York v. Hill*, 528 U.S. 110, 115 (2000) (quoting *Taylor v. Illinois*, 484 U.S. 400,

417-418 (1988)).  Thus, "defense counsel may waive on behalf of defendant ... strategic and

tactical matters such as the selective introduction of evidence, stipulations, objections and

pre-trial motions."  *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999).  Moreover, an

attorney may properly stipulate to exclude periods of time from the Speedy Trial Act where such

stipulations are entered into to afford counsel adequate time to review the evidence obtained

against the defendant and to negotiate a resolution of the criminal charge with the Government's

attorney.  *See Velez v. United States*, No. 05 CIV. 0537, 2006 WL 1952191, at *5 (S.D.N.Y. July

10, 2006) (attorney's stipulations excluding time periods from Speedy Trial Act to continue

negotiations with the Government "constituted reasonable professional assistance").  Attorney

Kindlon has testified that he entered into the above-referenced stipulations "to pursue plea

negotiations."  *See* Kindlon Aff. at ¶ 10.  Petitioner has not disputed that testimony in any way.

The foregoing establishes that Attorney Kindlon acted in an objectively reasonable

manner in entering into the stipulations upon which this aspect of Davis' Motion to Vacate is

based.  Therefore, this claim in his motion must be denied.

---

[14]  *See, e.g.*, 03-CR-0323, Dkt. No. 11 at p. 2; *id.*, Dkt. No. 12 at p. 2; *id.*, Dkt. No. 13 at p. 2; *id.*, Dkt. No. 14 at p. 2; and *id.*, Dkt. No. 17 at p. 2.

15

Petitioner next faults his attorney for advising Davis to seek psychiatric treatment after he was arrested. *See* Motion to Vacate, Ground One. In support of this ground, he argues that during the course of the criminal matter below, he informed his attorney that he was innocent of the charges, and that therefore any counseling directed at eliminating sexually addictive behavior would be "useless." Supporting Mem. at p. 13. Davis claims that notwithstanding the foregoing, his counsel advised him to seek such counseling, which caused Davis to falsely incriminate himself, *id.*, and increased the length of his sentence. Reply at p. 7.

The fact that Davis sought counseling in no way contributed to his ***conviction***; at no point during the proceeding at which Davis entered his change of plea was his participation in counseling or therapy ever mentioned.[15] *See* Plea Tr. Since Davis cannot demonstrate that his participation in counseling played any role in this Court's decision to accept Davis' guilty plea, his ***conviction*** cannot be vacated based upon this theory.[16]

Davis correctly notes, however, that the sentence he received was based, in part, on his participation in above-referenced counseling. However, contrary to his habeas claim, his participation in counseling ***reduced*** his overall sentence; it did not lengthen it. Specifically, the record reflects that after Davis' counsel argued at sentencing that this Court should make a downward departure from the guideline range of imprisonment due to Davis' post-conviction rehabilitation, *see* Sentencing Tr. at pp. 4-5; *see also* U.S.S.G. § 5K2.0(b), this Court noted that it

---

[15] Whether an individual is seeking therapy or counseling is a fact that is irrelevant with respect to the proof that the Government would have been required to produce at trial concerning the charge against petitioner.

[16] Attorney Kindlon noted in his affirmation that either Davis or his wife first mentioned the possibility of Davis entering therapy. *See* Kindlon Aff. at ¶ 13. This testimony is buttressed by a copy of an e-mail transmission petitioner himself provided to the Court in his Reply in which Attorney Kindlon urged Davis to enter counseling and noted that he was unaware of the reputation possessed by a specific treatment center that Davis' wife had ***previously mentioned to Attorney Kindlon***. *See* Reply at attachment A.

16

would "sentence [Davis] to the low end of the sentencing guidelines ... because of that fact."[17]
Sentencing Tr. at 7. The sentence this Court imposed on Davis reflects this fact; the applicable
Guideline range of imprisonment to which Davis was subject was between thirty three and forty
one months, and this Court sentenced Davis to the lowest end of that range – thirty three months
imprisonment. *Id.* at 10. Therefore, petitioner is clearly not entitled to habeas intervention based
upon this theory.

Davis next claims that his attorney wrongfully failed to move to have the Plea Agreement
vacated when it was learned that Davis was required to register as a sex offender. *See* Motion to
Vacate, Ground One. In support of this claim, petitioner asserts that he was unaware of the
requirement that he would be required to register as a sex offender until the time of sentencing,
and maintains that he would not have pleaded guilty to the crime if he had known of that
requirement prior to that time. *Id.*

Although Davis correctly notes that this Court did not specifically reference the fact he
was required to register as a sex offender until sentencing, this claim appears to overlook the fact
that "[r]egistration as a sex offender is a ***collateral effect***" of a guilty plea. *Stephens v. United
States*, No. CIV.A.06 5386, 2007 WL 1233557, at *3 (E.D.N.Y. Apr. 25, 2007) (citations
omitted) (emphasis added); *see also Gore v. Andrews*, 99 F.3d 1149 (10th Cir. 1996)
(unpublished) (denying Motion to Vacate based upon failure to disclose sex offender registration
requirement; "the requirement [petitioner] register as a sex offender is a collateral consequence of
his plea);[18] *United States v. Alford*, No. 04-CV-41, 2007 WL 2698720, at *14 (N.D.Fla. Sept. 11,
2007) (denying § 2255 claim which alleged that counsel was ineffective because he failed to

---

[17]     The Court, however, denied counsel's downward departure motion. *See* Sentencing Tr. at 7.

[18]     U.S.Ct. of App. 10th Cir., Rule 32.1 provides, in part, that although unpublished decisions are
not precedential, they may nevertheless "be cited for their persuasive value." *Id.*

17

advised petitioner of sex offender registration requirement that resulted from petitioner's guilty plea); *Denton v. Quarterman*, 06-CV-282, 2007 WL 846516, at *5 (N.D.Tex., Mar. 21, 2007) ("requirement that a convicted sex offender register with state authorities is ... a collateral consequence and failure to admonish a defendant as to the registration requirements does not render a guilty plea involuntary").

The foregoing establishes that Davis' ignorance of the fact that he would be required to register as a sex offender following his guilty plea did not constitute a viable ground upon which to seek the withdrawal of his guilty plea. Therefore, Davis cannot prevail on his claim that his counsel rendered ineffective assistance by not seeking to vacate the guilty plea on that ground.[19]

In sum, petitioner has failed to demonstrate that any of the theories he now advances supports his claim that he received the ineffective assistance of counsel in conjunction with the related criminal matter. This Court therefore denies his first ground for relief.

### b.  Ground Two

In addition to the claims Davis raised in his first ground for relief arguing ineffective assistance, Davis also asserts, in his second ground for relief, that his guilty plea was not knowingly and intelligently made because his trial attorney rendered ineffective assistance. Specifically, he asserts in that ground that his trial counsel: a) failed to conduct appropriate investigations and/or research; b) wrongfully advised Davis that he would receive a lesser sentence if he pleaded guilty; c) failed to inform Davis that he would be required to register as a sex offender if he pleaded guilty to the Information; and d) did not advise Davis that if he pled guilty to the charge he would be forced to waive his right to file a collateral challenge to his

---

[19]     Attorney Kindlon has testified that he was aware that the sex offender registration requirement was "not a viable ground upon which to withdraw a plea." *See* Kindlon Aff. at ¶ 14. He therefore declined to move to set aside the plea on that basis.

conviction pursuant to 28 U.S.C. § 2255.  *See* Motion to Vacate, Ground Two.

Davis' claim that his counsel failed to conduct an adequate pretrial investigation is belied by the transcript of his change of plea.  Specifically, the record reflects that at that proceeding, this Court specifically requested that defense counsel state on the record how much time counsel had spent with his client in preparation for the change of plea, as well as the manner in which he had prepared his defense to the charges against Davis.  Plea Tr. at pp. 22-23.  In response, Attorney Kindlon declared that he had:  i) "communicated by telephone on innumerable occasions" with Davis about the criminal case; ii) "extensively" discussed the various aspects of the case with Davis' spouse; and iii) engaged in "extensive discussions" with Davis regarding the evidence the Government had amassed against him.  *See* Plea Tr. at pp. 23-24.

"A petitioner's 'bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.'"  *Atkinson v. United States*, No. 05-CV-286, 2005 WL 3555946, at *7 (N.D.N.Y. Dec. 28, 2005) (McAvoy, S.J.) (quoting *Sheedy v. United States*, No. 96-CV-1289, 1997 WL 394664, at *9 (N.D.N.Y. July 8, 1997) (Munson, S.J.)) (other quotation and citations omitted)).  Since the objective evidence before this Court establishes that defense counsel reviewed the discovery materials relating to the criminal charge, discussed those materials with Davis and thereafter negotiated the terms of the plea agreement with AUSA Spina, Davis' claim that his attorney failed to properly prepare for Davis' criminal case is without substance.

As to petitioner's claim that his attorney failed to explore potential defenses to the charge against petitioner, the Court notes that Davis refers this Court to the claims he has asserted in the first ground in his petition as support for this claim.  *See* Motion to Vacate, Grounds One, Two.  However, because this Court has found all of the claims asserted by Davis in his initial ground to

19

be without substance, they cannot now support Davis' claim that his attorney rendered ineffective assistance by failing to pursue these potential defenses on behalf of petitioner.

Davis next contends that counsel wrongfully advised Davis that he would receive a lesser sentence if he pleaded guilty. Motion to Vacate, Ground Two. However, the Probation Department for the Northern District of New York, in calculating Davis' offense level for purposes of his sentencing, reduced his total offense by two points under the Sentencing Guidelines because he accepted responsibility for his criminal conduct by pleading guilty to the charge. *See* Pre-Sentence Report (11/10/03) at ¶¶ 28, 32. The Court adopted that determination at sentencing, and thereafter sentenced petitioner to the bottom of the range of imprisonment to which he was subject under the Sentencing Guidelines. Sentencing Tr. at p. 10. If Davis had not accepted responsibility through his guilty plea, his total offense level would not have been reduced by two points by this Court, and his total offense level would therefore have been twenty-two (rather than twenty) which, under the Sentencing Guidelines, would have subjected Davis to a range of imprisonment of between 41-51 months. *See* U.S.S.G., CH. 5, PT. A (Sentencing Table). A sentence on the bottom of that range would have been eight months longer than the 33 month term of imprisonment imposed on Davis by this Court. Accordingly, counsel's advice to Davis that he would have received a longer sentence if he were found guilty following a jury trial was accurate and therefore did not amount to objectively unreasonable conduct

As to movant's claim that his counsel did not inform Davis that he would be required to register as a sex offender if he pleaded guilty to the Information, the Court notes that, for the reasons discussed more fully above in conjunction with Davis's initial ground for relief, because the requirement that an individual register as a sex offender following a guilty plea is merely a collateral consequence of that plea, the failure of an attorney to discuss that requirement with a

defendant "does not support an ineffective assistance of counsel claim." *Stephens*, 2007 WL 1233557; *see also Alford*, 2007 WL 2698720, at *14.

Finally, Davis' claim that his counsel failed to advise him that he was required to forego filing a challenge pursuant to 28 U.S.C. § 2255 if petitioner pleaded guilty to the crime appears to overlook the significant, contradictory facts that Davis: i) executed a plea agreement that contained such waiver as a condition of the plea (*see* Plea Agreement at ¶ 13); and ii) Davis specifically informed this Court at his change of plea that his attorney had discussed that very provision of the Plea Agreement with Davis. *See* Plea Tr. at pp. 19-20.

Statements made during a plea allocution are presumptively true "absent credible reason[s] justifying departure from their apparent truth." *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992);[20] *United States v. Caesar*, 94 Cr. 59, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995) (citations and internal quotations omitted); *see also United States v. Napolitano*, 212 F.Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, D.J.) ("defendant's admissions ... [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion"). Since the objective evidence establishes that Davis' counsel discussed the waiver with his client, petitioner is not entitled to habeas relief on this theory.[21]

### 2. **Validity of Guilty Plea**

Davis' second ground for relief, in addition to claiming that Davis received the ineffective assistance of counsel, also argues that his guilty plea was not intelligently and voluntarily made for reasons independent of counsel's allegedly deficient performance. *See* Motion to Vacate,

---

[20] As the Supreme Court observed in *Blackledge v. Allison*, 431 U.S. 63 (1977), a criminal defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* at 74.

[21] The Court would be remiss if it failed to note that at his change of plea, Davis advised the Court that he was satisfied with the services that counsel had been performed on Davis' behalf. *See* Plea Tr. at p. 14.

Ground Two.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (guilty plea is valid when it is both knowingly and voluntarily made).

In support of his claim that his guilty plea was neither intelligently nor voluntarily made, Davis reiterates the claims he raised in his initial ground for relief, arguing that counsel's purportedly deficient performance caused Davis to plead guilty to a charge despite the fact that he was actually innocent of the crime. *See* Supporting Mem. at pp. 16-21.

However, this Court has found all of the claims alleging ineffective assistance to be without merit. *A fortiori*, Davis' claim that his guilty plea was not intelligently or voluntarily made because he received ineffective assistance of counsel is without substance.

Additionally, this Court has reviewed the transcript of Davis' change of plea to ascertain whether there is record support for his current claim that his guilty plea is invalid. However, the transcript of that proceeding reflects that Davis made the following representations to this Court under oath: i) Davis had been advised of his legal rights by his counsel; ii) he had not been forced or threatened to enter into the plea agreement; and iii) he was pleading guilty to the charge freely and voluntarily. Plea Tr. at pp. 14-15. Davis then listened to all of the allegations the Government declared it could prove regarding Davis' criminal conduct, which established that he was guilty of the charge discussed in the Criminal Information, and he then acknowledged to this Court that AUSA Spina's comments about what had transpired was true. Plea Tr. at pp. 16-18.

22

Since Davis knowingly, intelligently and voluntarily pleaded guilty to the charge, this final aspect of his second ground for relief must be denied.

### 3.  Prosecutorial Misconduct

In his third ground, Davis argues that his due process rights were violated by the Government because it "failed to disclose evidence favorable to Petitioner's guilt [*sic*] and falsified evidence against Petitioner."  Motion to Vacate, Ground Three.[22]

This claim necessarily brings into play Davis' right to a fair trial, which is mandated by the Due Process Clause of the United States Constitution.  *E.g.*, *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)).[23]  In the context of a claim that the prosecution withheld exculpatory evidence, the Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  To prove a *Brady* violation, a habeas petitioner must establish that:  1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding.  *Moore v. Illinois*, 408 U.S. 786 (1972); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Eubanks v. United States*, No. 97 Civ. 3891, 2005 WL

---

[22]     In *Dunn v. Senkowski*, 03-CV-0364, 2007 WL 2287879 (N.D.N.Y. Aug. 7, 2007), Senior Judge Neal P. McCurn observed that "some district courts within this Circuit have opined that an individual's right to receive *Brady* material cannot be waived, notwithstanding the existence of a valid guilty plea," in part because of the view that "guilty pleas cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution."  *Dunn*, 2007 WL 2287879, at *13 & n.16 (citations and quotations omitted).  This Court finds the reasoning of Judge McCurn in *Dunn* to be persuasive, and accordingly considers the propriety of Davis' *Brady* claim, notwithstanding his guilty plea and valid § 2255 waiver.

[23]     "A right to a fair trial is a right ... protected by the due process clause of the Fourteenth Amendment."  *Adamson v. People of State of California*, 332 U.S. 46, 53 (1947) (footnote omitted).

23

1949474, at *7 (S.D.N.Y. Aug. 11, 2005) (citing *Brady*) (other citation omitted).

In support of his contention that the prosecution violated petitioner's *Brady* rights, Davis asserts that:

> [T]he Government failed to disclose or destroyed e-mail communications that would have shown [that] Meghan said she was 18 years old and living with her mother.... [T]he Government knowingly destroyed and withheld the foregoing evidence from defense counsel to impede Petitioner's ability to put forth a defense for the Petitioner.

Supporting Mem. at p. 23.

"To prevail on a *Brady* claim, a party must initially establish that the evidence sought, in fact, existed." *Campbell v. Greene*, 440 F.Supp.2d 125, 154 (N.D.N.Y. 2006) (McCurn, S.J.) (citations omitted); *see also Ahmed v. United States*, 2006 WL 328339, at *12 (S.D.N.Y. Feb. 14, 2006) (citations omitted). In the present case, Davis offers nothing short of sheer surmise in support of his claim that any e-mails or other written communications between Davis and "Meghan" existed in which she represented that she was eighteen years old. Unfortunately, courts cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation. *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); *see Williams v. Duncan*, No. 9:03-CV-568, 2007 WL 2177075, at *15 (N.D.N.Y. July 27, 2007) (citing *Wood*) (Kahn, J., adopting Report-Recommendation of Magistrate Judge Randolph F. Treece).

The only **evidence** before this Court relating to this issue conclusively establishes that the undercover officer who used the name "Meghan" in his interactions with Davis always represented to Davis that the officer was a minor. *See* 05-CV-0256, Dkt. No. 10, Exh. 4 at pp. 9, 15 (transcripts of on-line chats); Voluntary Statement (Davis admitting to the police that he had "on-line conversations about sex with 14 year-old girl"); Plea Agreement at ¶ 5 (factual basis for

24

plea); Plea Tr. at p. 10 (Davis pleading guilty to violating 18 U.S.C. § 2246(2)).

Since no evidence supports the factual basis for Davis' third ground for relief, the Court denies same. [24]

### 4.    Failure to File Notice of Appeal

In his fourth and final ground for relief, Davis asserts that his trial attorney denied Davis the right to pursue an appeal of relating to the criminal matter below.  *See* Motion to Vacate, Ground Four.  Specifically, he claims that counsel "failed to file a notice of appeal as Petitioner requested."  Supporting Mem. at p. 24.

Pursuant to FED. R. APP. P. 4(B), a criminal defendant has a maximum of forty days after the entry of judgment in a criminal case to timely file a notice of appeal; the ten day period afforded by FED. R. APP. P. 4(b)(1)(A), plus up to thirty additional days upon grant of extension of time for excusable neglect or good cause.  FED. R. APP. P. 4(b)(4); *see United States v. Fuller*, 332 F.3d 60, 64 (2d Cir. 2003).

Although Davis claims that he requested that his counsel file a notice of appeal on Davis' behalf, *see* Petition, Ground Four, he fails to state, in either his Motion to Vacate or supporting memorandum of law, whether he made this request within the forty-day time period referenced above.[25]  Since the appellate time limits referenced above "are jurisdictional," *see Fuller*, 332 F.3d at 64, the timing of Davis' alleged request to file an appeal is crucial; if same was made after the deadlines noted above had already elapsed, he could not demonstrate that he was prejudiced

---

[24]     It bears noting that because "Meghan" was, in fact, an undercover officer involved in a "sting" operation, the primary purpose of which was to ferret out individuals violating laws prohibiting sexual contact with minors, it strains credulity to believe that an undercover officer acting in that capacity would hold himself out as an individual who had attained the age of majority in his on-line conversations with potential suspects.

[25]     In his supplemental affirmation, Attorney Kindlon declares that "Davis never mentioned anything about wishing to appeal until many months after he was sentenced."  *See* Supplemental Affirmation of Terence L. Kindlon, Esq. (7/12/05) at ¶ 3.

by counsel's failure to file an ***untimely*** notice of appeal. Therefore, this Court directs Davis to file an affidavit with the Court in which he declares the date on which he claims he directed his trial counsel to file a notice of appeal in the related criminal matter. If Davis is unable to recall the exact date of such request, he shall, at a minimum, declare in his affidavit whether the request was timely made of counsel in light of the deadlines discussed above.

## III. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions, the applicable law, and for the reasons stated herein, it is hereby

**ORDERED**, that Davis' Motion to Vacate is **DENIED** as to Grounds One through Three, and it is further

**ORDERED**, that Davis file with the Court, and serve on counsel for the respondent, the affidavit discussed above, within **THIRTY DAYS** of the date of this Memorandum-Decision and Order, and it is further

**ORDERED,** that if Davis fails to timely file such affidavit that this action be dismissed for the reasons stated herein and due to petitioner's failure to comply with the terms of this Memorandum-Decision and Order, and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

**IT IS SO ORDERED.**

Dated: December 5, 2007
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

26